UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JACK E. BERRY,<br>      Plaintiff, | )<br>)<br>) |
| v. | )   CAUSE NO.: 2:23-CV-162-JEM |
| MARTIN O'MALLEY, Commissioner<br>of the Social Security Administration,<br>      Defendant. | )<br>)<br>)<br>) |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1] filed by Plaintiff Jack Berry on May 17, 2023, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 13], filed on October 23, 2023. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On February 6, 2024, the Commissioner filed a response, and Plaintiff filed a reply on February 20, 2024. On May 7, 2024, the Government filed a notice with supplemental authority. For the following reasons, the Court remands the Commissioner's decision.

**I.    Background**

On July 26, 2019, Plaintiff was found to have been disabled beginning on May 28, 2019, and on May 18, 2021, in a continuing disability review, he was found to be no longer disabled. On July 14, 2022, Administrative Law Judge ("ALJ") Marc Jones held a telephonic hearing at which Plaintiff, without an attorney, and a vocational expert ("VE") testified. On August 9, 2022, the ALJ issued a decision finding that Plaintiff was not disabled after May 18, 2021.

The ALJ made the following findings under the required five-step analysis:

1.    The most recent favorable medical decision finding that the claimant was disabled is the decision dated July 26, 2019, known as the comparison point

1

      decision ("CPD").

2. A the time of the CPD, the claimant had the medically determinable impairment of congestive heart failure, found to meet section 4.02 of 20 CFR Part 404, Subpart P, Appendix.

3. The claimant has not engaged in substantial gainful activity.

4. Since May 18, 2021, the claimant has had the following medically determinable impairments: anxiety, congestive heart failure, hypertension, and obesity.

5. Since May 18, 2021, the claimant has not had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

6. Medical improvement occurred on May 18, 2021.

7. The medical improvement is related to the ability to work, by May 18, 2021, the claimant's CPD impairment no longer met or medically equaled the same listing that was met at the time of the CPD.

8. Since May 18, 2021, the claimant has continued to have a severe impairment or combination of impairments.

9. Based on the impairments present since May 18, 2021, the claimant has the residual functional capacity to perform light work except that he can occasionally climb ramps and stairs, as well as occasionally stoop, kneel, crouch, and crawl. He can never climb ladders, ropes or scaffolds and never work at unprotected heights. He must avoid concentrated exposure to extreme heat, dust, odors, fumes and pulmonary irritants. He is limited to simple, routine tasks with no assembly line work or strictly enforced hourly production quotas.

10. Since May 18, 2021, the claimant has been unable to perform any relevant past work.

11. On May 18, 2021, the claimant was a younger individual age 18-49 on alleged disability onset date.

12. The claimant has at least a high school education.

13. Since May 18, 2021, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether

or not the claimant has transferable job skills.

14. Since May 18, 2021, considering the claimant's age, education, work experience, and residual functional capacity based on the impairments present since May 18, 2021, the claimant has been able to perform a significant number of jobs in the national economy.

15. The claimant's disability ended on May 18, 2021, and the claimant has not become disabled again since that date.

Plaintiff now seeks judicial review of this decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. [DE 23]. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.     Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the

question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)).

At a minimum, an ALJ must "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2014). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

**III.  Analysis**

Plaintiff argues that the ALJ failed to develop the record and did not adequately evaluate the information he did consider. The Commissioner argues that the opinion is supported by substantial evidence.

First, Plaintiff argues that the ALJ failed to meet the obligations to develop the record. Plaintiff was unrepresented at the hearing, but the Commissioner argues that the ALJ sufficiently explained the right to counsel to Plaintiff. "A claimant has a statutory right to counsel at a disability

4

hearing," but that right is waivable. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994) (citing 42 U.S.C. § 406, 20 C.F.R. 404.1700; *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir.1991)). In order for the waiver to be valid, there are three things the ALJ must explain: "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Williams v. Saul*, 782 F. App'x 488, 491 (7th Cir. 2019) (quoting *Binion*, 13 F.3d at 245).

Plaintiff does not argue that the waiver was inadequate, but that the ALJ failed to adequately develop the record, particularly given that Plaintiff was unrepresented and has mental limitations. In particular, Plaintiff argues that the ALJ should have developed the record to include records Plaintiff referred to in the hearing. The Commissioner argues that the ALJ did not err in failing to obtain the records and that Plaintiff has not shown that the new records would have changed the outcome of the decision.

In the case of an unrepresented claimant, "the ALJ has a duty 'scrupulously and conscientiously [to] probe into, inquire of and explore for all of the relevant facts.'" *Binion* 13 F.3d at 245 (quoting *Smith v. Sec'y of Health, Education, & Welfare*, 587 F.2d 857, 860 (7th Cir.1978)); *see also Mallett v. Barnhart*, 81 F. App'x 580, 582 (7th Cir. 2003). The ALJ's duty to "fully and fairly to develop the record . . . is greatly heightened when the claimant is unrepresented and has mental impairments." *Rebecca H. on behalf of Joseph H. v. Kijakazi*, No. 4:21CV15, 2022 WL 354696, at *9 (N.D. Ind. Feb. 7, 2022) (citing *Binion*, 13 F.3d at 245; *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Ransom v. Bowen*, 844 F.2d 1326, 1330 n.4 (7th Cir. 1988)); *see also Wiszowaty v. Astrue*, 861 F. Supp. 2d 924, 938 (N.D. Ind. 2012) ("Because Mr. Wiszowaty was not

represented by counsel, the ALJ had a duty to 'scrupulously and conscientiously probe into, inquire of and explore for all of the relevant facts.' The burden is on the Commissioner to show the ALJ adequately developed the record") (quoting *Sec'y of Health*, 587 F.2d at 860). Some of the factors a court will consider when determining whether an ALJ has developed the record include:

> (1) whether the ALJ obtained all of the claimant's medical and treatment records;
> (2) whether the ALJ elicited detailed testimony from the claimant at the hearing (probing into relevant areas, including medical evidence on the record, medications, pain, daily activities, the nature of all physical and mental limitations, etc.), and
> (3) whether the ALJ heard testimony from examining or treating physicians.

*Ferguson v. Barnhart*, 67 F. App'x 360, 367 (7th Cir. 2003). "If the Commissioner fails to make the requisite showing, the case must be remanded." *Chatmon v. Barnhart*, No. 04C344, 2004 WL 3246111, at *2 (N.D. Ill. Aug. 13, 2004) (citing *Thompson*, 933 F.2d at 586).

At the hearing, Plaintiff referred to medical records that he tried to submit prior to the hearing but which the ALJ had not received. The ALJ said he had not yet received them but that he would "be on the lookout for the other exhibits that [Plaintiff] mentioned," AR 74, implying that Plaintiff need not do anything else to ensure that the ALJ got the records and that the ALJ would take them into consideration in making his determination. During the brief 25-minute hearing, less than half of which was testimony by Plaintiff, Plaintiff testified that he experienced an increase in anxiety that affects his ability to work and difficulty concentrating, and referred to agitation, anxiety, and memory issues. AR 76-84. The ALJ did not ask Plaintiff about the content of the medical records or question Plaintiff about mental health treatment.

Despite the Commissioner's argument that Plaintiff was given the opportunity to develop the record, and that he has not shown that the additional records would change the ALJ's opinion, some of the new information directly contradicted the ALJ's finding. For example, the ALJ noted

that Plaintiff had not undergone any mental health treatment or taken medications to treat his mental health, and therefore concluded that Plaintiff's mental abilities were without significant functional deficits. AR 17. However, the new records show that Plaintiff had been receiving treatment, including medication, for his mental health problems, which included memory loss, anxiety, depression, and confusion.

Even without a full picture of Plaintiff's mental limitations, the ALJ concluded that Plaintiff had moderate limitations in concentration, persistence, and pace, but neither the ALJ nor the VE had records regarding the mental health treatment Plaintiff had received, and there was no question to the VE incorporating specific limitations in concentration, persistence, or pace. "Again and again, [the Seventh Circuit Court of Appeals] ha[s] said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations." *Winsted v. Berryhill*, 923 F.3d 472, 476-77 (7th Cir. 2019) (collecting cases). "Although it is not necessary that the ALJ use the precise terminology of 'concentration,' 'persistence,' or 'pace,' [courts] will not assume that a VE is apprised of such limitations unless he or she has independently reviewed the medical record." *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015). A hypothetical that does not include these terms may still be sufficient if it is "manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *O'Connor-Spinner*, 627 F.3d at 619.

In this case, the ALJ's hypothetical to the VE did not mention any specific difficulty concentrating, persisting in a task, or maintaining pace, but reflected the same limitations as is in the ultimate RFC, describing someone who "is limited to simple, routine tasks, with no assembly

7

line work or strictly enforced hourly production quotas." AR 85. The VE also testified that someone with those limitations could not remain employed if he was off-task for more than fifteen percent of a workday. AR 86. It is not apparent to the Court whether there are jobs that Plaintiff is able to do given his limitations in concentration, persistence, and pace, and particularly if those limitations are exacerbated by other mental limitations the ALJ did not consider because he did not review Plaintiff's mental health treatment records. *See, e.g., Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("[W]e have likewise underscored that the ALJ generally may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace. More to it, observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift.") (quoting *Winsted*, 923 F.3d at 477); *DeCamp v. Berryhill*, 916 F.3d 671, 675-76 (7th Cir. 2019) ("[T]here is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace."); *Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014) ("[W]e have repeatedly rejected the notion that . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace."); *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (rejecting the contention "that the ALJ accounted for [the plaintiff]'s limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public").

The Court also notes that the ALJ relied on Plaintiff's reports of very limited daily activities to conclude that he is able to work full time, and notes that despite his reported anxiety and shyness, "he considers himself a nice person." AR 16. The ALJ does not explain how being a "nice person" or being able to take a shower on the days he is feeling better means that Plaintiff would be able to sustain eight hours of work, no matter the pace. *Reinaas v. Saul,* 953 F.3d 461, 467 (7th Cir. 2020) ("We have previously cautioned ALJs that there are critical differences between keeping up with activities of daily living and holding down a full-time job."); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (noting "critical differences between activities of daily living and activities in a full-time job," such as "that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer"); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home . . . The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically between home and office or factory or other place of paid work.").

Although the Commissioner argues that the decision is well-supported, even without the medical records Plaintiff sought to bring to the ALJ's attention, the Court disagrees. The Court has concerns with whether the questions to the VE encompassed Plaintiff's RFC, even without the additional concerns about the accuracy of the RFC given the ALJ's failure to review Plaintiff's mental health treatment records. The Court cannot conclude that the ALJ met his "duty to develop a full and fair record," particularly since "this duty is enhanced when a claimant appears without

9

counsel." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009).

Plaintiff also argues that the ALJ's evaluation of consulting physicians in the record was inadequate, and that the ALJ failed to account for Plaintiff's fatigue in his RFC assessment. On remand, the ALJ is directed to fully develop the record and to consider all of the medical evidence and opinions in the record. The ALJ should fully consider each of Plaintiff's alleged impairments, alone and in combination, and provide a logical bridge from the evidence to his conclusion.

## IV. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 13] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 28th day of August, 2024.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc:  All counsel of record